(173 App. Div. 834)

#### GLENDENING v. WESTERN UNION TELEGRAPH CO.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

JUDGMENT ☜585(4)—RES JUDICATA.

A lessee cannot recover damages for loss of his lease, on the theory that the landlord's malicious acts so injured his business that he was forced to enter into an agreement with a third party, which was declared by judgment to be an assignment forfeiting his lease, since in such action the claim for damages would have been a defense, and is therefore by such prior judgment foreclosed.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1084, 1085, 1095, 1132; Dec. Dig. ☜585(4).]

Appeal from Special Term, New York County.

Action by George O. Glendening against the Western Union Telegraph Company. From an order overruling demurrer to amended complaint, defendant appeals. Order reversed, and demurrer sustained, with leave to plaintiff to serve further amended complaint.

See, also, 163 App. Div. 489, 148 N. Y. Supp. 552.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Francis Raymond Stark, of New York City, for appellant.
George Gordon Battle, of New York City, for respondent.

DOWLING, J.   This action is brought to recover the sum of $100,-000 damages claimed to have been sustained by plaintiff by reason of defendant's unlawful acts.   Plaintiff leased from defendant on April 28, 1908, part of the premises 8, 10, and 12 Dey street, in the city of New York, for a term of years, and entered into possession thereof, maintaining a restaurant therein.   It is his claim that:

"Soon after the making of said lease, defendant contemplated the development of said real estate by the removal of the antiquated buildings standing thereon and the erection in their stead of new structures of modern size and design, and desired the surrender of the premises described in said lease (Exhibit A) before its termination in 1918, or to lessen the extent and value of said lease, which fact was then unknown to plaintiff."

"With this object in view, defendant began and carried on a systematic and steady course of proceedings to injure the plaintiff's business and to deprive him of the full value of his lease; and while the facts as they occurred were known to plaintiff, he did not recognize the object which defendant had in view, and has only been informed thereof very recently."

The acts of which plaintiff complains, briefly stated, are:

(1) Plaintiff orally agreed to sublet a part of the premises to one Durant for the sale of roasted coffee, with the knowledge and approval of defendant, and fitted up such part for Durant at an expense of $2,000, whereupon defendant refused to give its written consent to such lease unless plaintiff made provision therein that the portion sublet "would be released and restored to it in case defendant should require it for a boiler and engine room, which, it stated, was not very probable"; that such statement was made for the purpose of depriving plaintiff of a part of the demised premises; that plaintiff

made an agreement in writing with defendant, the terms of which Durant accepted, whereby plaintiff agreed to procure the surrender of the premises sublet if defendant required the same for a boiler and engine room; that plaintiff then on August 21, 1909, sublet the part of the premises in question to Durant for a term of years, and defendant gave its written consent thereto; that on July 26, 1911, defendant gave notice that it required possession of the space leased to Durant as provided by the agreement; that plaintiff, relying upon defendant's statement that it intended to use the space for a boiler and engine room, called on Durant to surrender possession, and upon his doing so paid him $500 as provided in their lease. Defendant entered into possession of the space in question in September, 1911. The statements made by defendant were false, and "a mere pretense, used in pursuance of its plan or scheme to break the long term as to a part of the premises leased to plaintiff, and to lessen the value of his lease, so that defendant might more easily obtain the cancellation thereof when it desired to demolish the buildings to make way for its proposed improvements." Defendant never used the space as a boiler and engine room, but moved into the same another tenant from its building 6 Dey street. Plaintiff, solely in reliance on the truth of defendant's expressed intention to use the space as a boiler and engine room, accepted a reduction of his rent from $10,000 to $8,500, as provided in his agreement with defendant, and released Durant and surrendered the space to defendant, which the latter has never offered to return to plaintiff, nor to make good the loss he sustained by the removal of Durant therefrom.

(2) In October, 1911, defendant notified plaintiff in accordance with the provisions of paragraph 21 of the lease that it required possession of the rear 9 feet of the demised premises for an entrance to its stores to the west, and plaintiff, relying upon the truth of the statement, surrendered the space to defendant and reset his kitchen equipment at an expense of $500, and with damage in loss of space and ventilation, whereas in fact defendant did not desire to use the space for the purpose assigned, but gave the notice merely to deprive plaintiff of the space, and to impose expense on him, and to render his lease less valuable, all as part of the scheme to secure a surrender of the lease, and defendant did not in fact use the space thus taken for an entrance to its stores.

(3) When the lease between plaintiff and defendant was executed there was a door opening from the main hall of defendant's building into plaintiff's restaurant, and in October, 1910, defendant closed said door and deprived plaintiff and his patrons of its use, causing him a loss of customers and financial damage; this being done arbitrarily and to injure plaintiff's business, that defendant might more easily obtain possession of the premsies demised to plaintiff.

(4) "In the foregoing and in various other ways, and as a part of its said general scheme or plan to regain possession of said leased premises, defendant injured plaintiff's business and deprived him of his rights and privileges under said lease until, on or about August 28, 1912, plaintiff to secure necessary financial relief, was forced to enter

into an agreement with one John O'Brien, which said agreement has been judicially held to operate as an assignment of said lease, and as a forfeiture thereof, to plaintiff's great damage, so that plaintiff has lost all interest in said premises, and the defendant has succeeded in its plan and design by the means aforesaid to acquire possession of and title to the said leased premises and to take down the present old building and erect new buildings."

The demurrer was interposed upon the ground that the complaint did not state facts sufficient to constitute a cause of action. The demurrer was overruled, upon the ground that the complaint in effect charged that, defendant "having the right to repossess itself of certain portions of the demised premises in the event it desired to use them for certain specific purposes, it exercised its right ostensibly for the purposes expressed, but in fact maliciously and with the sole design to deprive plaintiff of the use of the portions so repossessed." The court held that:

"Each privilege implied a covenant on defendant's part that, when exercised, it would only be for the use expressed, and in case, if repossessed, defendant put those portions of the premises to a different use, and one which violated the covenant, and damage resulted to plaintiff, he might have his appropriate action," and that "it was a material feature of defendant's right to elect that, if exercised, it should be exercised, not only for the purposes of one of the expressed uses, but as well that it should be honestly exercised with an intent to serve an actual or intended use, and not maliciously and for the sole purpose of depriving plaintiff of a benefit."

The court found that the only parts of the complaint which were material were the acts enumerated in the first two charges hereinbefore set forth. As to these it held in effect that each of these two sets of acts constituted a good cause of action, and therefore, two good actions for damages being contained in the complaint, it was proof against demurrer. But this is not the theory of plaintiff's complaint, which is that but one cause of action is set forth. Upon a prior appeal from an order denying a motion to require plaintiff to separately state and number causes of action, and to strike from the complaint certain matters as irrelevant and redundant, this court said (165 App. Div. 952, 150 N. Y. Supp. 1088) in modifying the order:

"Accepting the contention of the plaintiff that he attempted to and did set out but one cause of action in his complaint, paragraphs 8, 9, all but the first 6 lines of paragraph 19, and paragraph 22 are irrelevant and redundant to said cause of action so claimed to be alleged."

In the brief of plaintiff's present counsel on that appeal he set forth that:

Plaintiff had not seen fit to frame a complaint setting forth separate causes of action for the acts complained of, if that course were possible, "but instead has alleged but one cause of action, namely, that the defendant in its attempt to force from plaintiff the surrender of the demised premises pursued unfair methods, which caused him great damage, one item of which was the loss of his lease. This constitutes a good cause of action, with interdependent acts looking to the accomplishment of one end; but these acts are the details or steps in a course of action resulting in a single injury. They do not constitute separate causes of action, and may properly be set forth in one count."

Not only must plaintiff be held to this theory of his complaint, upon which he succeeded in defeating the motion to compel him to separately state and number the claimed separated causes of action in his complaint, but upon this appeal he does not adopt the theory of the court below, upon which the demurrer was overruled, standing upon the proposition that:

The complaint "constitutes a cause of action based on the theory, not that we are suing to recover damages for the loss of the lease, but, on the contrary, for the damage caused by the acts of the defendant complained of, which, taken together, constitute a single cause of action good against demurrer."

Treating the complaint as setting forth a single cause of action, as plaintiff has always insisted was the fact, it is apparent from an examination of its allegations that the damage really sought to be recovered is the loss of plaintiff's lease, which is alleged to have been the ultimate purpose of defendant's design, in order to regain possession of the demised premises and erect its new building upon the whole plot. The Durant sublease and the repossession of the rear 9 feet are but incidents in the extinguishment of the lease, and are based on distinct acts of alleged bad faith on defendant's part, which, if they are actionable at all, are the subject of separate actions. But there can be no recovery for the loss of the lease upon the facts alleged in this complaint, for plaintiff has pleaded himself out of court as to that by showing that defendant did not deprive him of the lease by any actionable wrong, but that plaintiff himself is the cause of his own damage, by having violated the terms of his lease by assignment to John O'Brien, which has been judicially determined to operate a forfeiture of the lease by reason of plaintiff's violation of its terms. Defendant is not shown to have been the cause of making such assignment, nor is it suggested how plaintiff's voluntary, if unfortunate, violation of the plain provisions of his lease can be charged to defendant. Manifestly defendant was not the procuring cause of the plaintiff's dealings with O'Brien, with whom it had no dealings or relations. Furthermore, if defendant had been in any way the cause for the making of the assignment by plaintiff to O'Brien, that would have been a good defence to defendant's right to establish the forfeiture, and it never could have succeeded on its appeal to this court, when it was decided that plaintiff lost his lease as the result of his own violation of its terms. Glendening v. Western Union Telegraph Company, 163 App. Div. 489, 148 N. Y. Supp. 552. Treating the complaint as attempting to set forth one cause of action, the one alleged is insufficient, and the demurrer thereto should have been sustained.

Order appealed from reversed, with $10 costs and disbursements, and demurrer sustained, with $10 costs, with leave to plaintiff to serve a further amended complaint, if he so elects, on payment of such costs. All concur.